Solutions and Services, Inc. Mr. Cohen for the appellate, Mr. Beshami for the appellate. May it please the Court, my name is Peter Cohen and I represent the appellant Stephen Metz. Before the Court is a request to certify a question to the D.C. Court of Appeals on whether D.C. law permits a cause of action for tortious interference with at-will employment in certain cases. Mr. Cohen, this is my question about this. I've been on several cases where we actually have certified the D.C. and in the case of Judge Ginsburg into Pennsylvania. I've never been on a case where the loser below has asked us to certify but not at the same time said, well, if you don't certify, you should reverse. That is, first you decide the question yourself and if you're unable to decide the question yourself, then you certify. I find this very unusual approach and it seems to me that what you're asking for is you brought the case in the Federal District Court, you didn't like the result, and now rather than asking for a merits review by the Federal Court of Appeals, you would like the merits review to be done by the D.C. Court of Appeals. Am I wrong? This is very unusual, it seems to me. Do you know of any other cases where either we've ever done that or in fact anyone has ever asked us to do that? Well, Your Honor, we thought about the approach that you're talking about, which is affirmatively ask this court to reverse the district court. But after thinking about the matter, we thought that the more intellectually honest approach here would be to represent to the court how the matter actually is. And how the matter actually is is that there's a state of confusion in D.C. law on whether or not this kind of a cause of action can go forward in tortious interference claims. Right, but if that's correct, then why bring the case in Federal Court in the first place? Why not bring it in the only court which you think can resolve the confusion? I mean, that same confusion was present in the district court, I assume, correct? Well, we made that argument to the district court. The district court did not agree that there was confusion. But the reason why the case was brought in Federal Court is because the original complaint had a Federal claim in it. It had a claim for relief under the Federal Declaratory Relief Act, the Declaratory Judgment Act, to declare the non-compete clause here invalid. But what's the Federal claim? I'm not hearing the Federal claim. Well, the Federal claim was under the Declaratory Relief Act. But you understand that the Declaratory Judgment Act does not itself create a Federal cause of action. It just allows the court to declare the validity of a claim. Did you have an actual Federal claim? The claim was under that. I see. And the reason for it is because our experience was is that such declaratory judgment claims, arguments, are better understood in the Federal courts than they are in the D.C. Circuit. I take it the district court said that there was no Federal grounds for that claim, right? Ultimately, the claim became moot because the non-compete had run out. So there was no need for the court to make a decision based upon the Declaratory Judgment Act. The court did have supplemental jurisdiction over the related statements. Does the Superior Court not have authority to make declaratory judgments? It does. But our experience was is that it's the Federal district courts that are better acquainted with that statute. The other reason why we filed in Federal court was because from our assessment of the matter, there was a substantially likelihood it was going to be removed to Federal court anyway. I mean, 19 out of 20 times, that's what happened. Well, if it had been removed, then you wouldn't be facing these questions from me. Then it would be their fault, and they wouldn't be able to make the argument, which they've made in their briefs, that you should have begun in Superior Court. That would have taken away an argument and a concern I have about whether it seems like the appropriate way to go about this. Okay, but I have your answer. Go ahead. I'm sorry. And we do believe we understand the court's concern. We do think that it was sort of the more, and as I said before, the intellectually honest approach, to be honest with the court, about what the state of the law is in D.C. And the state of the law in D.C. is in flux, as six judges of the district court bench have acknowledged in this case. Well, the fact that our district court finds it in flux isn't really the question, right? The question is whether the D.C. courts find it in flux. Well, the D.C. Court of Appeals just recently spoke on the matter in the Little decision, which we submitted to the court by letter, in which it indicated that or it juxtaposed two decisions of the D.C. Court of Appeals, the McManus decision and the Sorrell's decision. And our argument to this court is that that's an indication by the D.C. Court of Appeals just a couple of weeks ago that the rule of whether tortious interference can go forward in at-will cases is in flux. It cited McManus, which answered that question partially no, but it also cited Sorrell's, in which the D.C. Court of Appeals allowed a tortious interference claim to go forward. I just wonder whether you're over-reading or maybe under-reading how strongly Little thought that Sorrell's was wrong, because in Little, the court says, citing this court's opinion in McManus, the trial court ruled that because Appellant was an at-will employee and acknowledged that he did not have a contract, he could not proceed on the claim of tortious interference with a contractual relationship. Understandably, Appellant does not press the former of those causes of action and then cites McManus. When it says understandably, that sounds like the view, at least of this panel of the Court of Appeals, is there's no argument here, and then says but see, and the but see is to Sorrell's. That certainly seems like the most recent decision of the D.C. Court of Appeals is that there is no cause of action here. Well, we would submit that the but see to Sorrell's is an indication that Sorrell's ruled differently. I mean, in Sorrell's, the D.C. Court of Appeals affirmed a jury verdict where the plaintiff's theory was exactly Mr. Metz's theory, which is third-party tortious interference involving an existing contractual relationship. But in Sorrell's, this issue, for whatever reason, the appellant in Sorrell's didn't make the argument at all you're making, right? Correct. With respect to Garfinkel's itself, there was an argument, and the Court of Appeals said sorry, it's an at-will contract, you can't sue Garfinkel's, right? In Sorrell's? Yeah. Because Ms. Sorrell was an at-will employee, she could be terminated at will by her employee for any reason and no reason at all. That's correct, against the employer. Yes, Garfinkel's. Right. Famous old retailer in Washington, D.C. Then she sues her supervisor. That's the cross appeal. And on that claim, the cross appellant who had lost below the supervisor doesn't make the at-will employee argument at all, Sorrell simply argues she cannot be liable on an interference with contract claim because she was an agent of the employer and because she was a supervisor. And the Court says that's not enough. But she doesn't seem to have made the argument that because this was an at-will contract, she can't be liable. But as we argued in the briefs, it's a combination of Sorrell's and then the later decision in Casco. It is true what you're describing. It's also true that the effect of what the D.C. Court of Appeals did in Sorrell was to allow the plaintiff to win on the theory that they ---- I totally agree. It is the effect. The question is whether it's an effect they thought about or not. Well, then we would argue it was affirmed in the Casco decision. Well, now I'm reading Casco, and Casco says, Sorrell establishes that a breach of contract is not required, but merely a failure of performance, whether by terms of the contract in question or not, which once again seems to be a different question than the one you're asking. The difference between cancellation of a contract and breaching a contract. Well, the plaintiff's theory in the Casco case was, again, this notion of a third-party interference with an existing contract that's terminable at will, and D.C. Court of Appeals affirmed that theory, citing Sorrell's. Yeah, but again, that wasn't, again, what was being argued. What was being argued before the Court of Appeals was, because MIF canceled the Casco contract as opposed to breaching it, Casco cannot recover. Well, here the analogy to Mr. Metz's current appeal would be, I mean, the Court did use the word cancellation in Casco because it wasn't an employment case. But the analogy to the employment relationship was essentially cancellation of the employment that was terminated. So these three cases all seem, I don't disagree that perhaps they would be fodder for an extension of the rule, but none of them actually state the point you want to make, while Futrell and McManus and Bibleway all seem to state expressly the point that the other side wants to make. Well, we would submit that there is confusion. In other words, Casco could have cited, the D.C. Court of Appeals in Casco could have thrown the plaintiff out of court by citing Bibleway and McManus. It didn't do that. No, I know. But so what I'm saying is you have three holdings against you and three dicta, or they could have done this or they could have held on this ground, but they didn't on your side. If a federal court, assuming we're not going to certify the case, if the federal court had to make a determination based on just that record in front of it, it seems like the best conclusion is that the D.C. Court of Appeals position is that you don't have a case. Now, that doesn't mean that the D.C. Court of Appeals couldn't give you a case in another case, but our job isn't to guess what they might do in extending their doctrine, is it? It depends on who the judge is in the district court. Six judges below have said in one form or another, I want you to take, just for the purpose of this argument, that it doesn't matter what our district judges think. No disrespect to our district judges, but the question is not what they think the D.C. law is. The question is what does D.C. think the D.C. law is. Well, we would submit that there are two lines, Bible of McManus and Fertrell, and then Sorrells, Casco, and now Little, we would submit, does cast further doubt. It did juxtapose McManus with Sorrells, and it did expressly say that McManus didn't decide the issue. I don't want to monopolize the conversation. I do have just one last question. If we decide not to certify, then I'm right, am I not? You haven't made an argument that we should reverse. Your only request to us in the briefs is to certify. That's correct. That is correct. We thought that was the intellectually honest approach. Intellectual honesty is greatly appreciated. Let me ask my colleagues if they have questions. Honestly, no. Okay. Intellectually, no. Intellectually, no. Thank you. Thank you. All right. Mr. Buscemi. Thank you, Your Honor. May it please the Court. As the case comes to this Court, as the previous argument pointed out, there's only one count of plaintiff's amended five-count complaint that remains at issue, and there's only one form of relief that's sought by the plaintiff. Was there a Federal claim in the original complaint? I don't believe so, Your Honor. The statement that has been made by the plaintiff, which is that there was a claim for declaratory relief, is accurate to the extent that Count 1 sought declaratory relief, but that doesn't make Count 1 a Federal claim, as Your Honor pointed out. Did it have a declaration that some Federal law was involved? No, Your Honor. I don't believe so. It's a diversity case, and it's here under the Court's diversity jurisdiction. And if plaintiff thought that 2201 request for declaratory relief was enough to grant Federal question jurisdiction, I think plaintiff would have been incorrect. Now, the only relief sought is this certification of a question or possibly two questions to the D.C. Court of Appeals. But it's undisputed. In fact, the amended complaint itself alleges that plaintiff was an at-will employee when he was employed by that company in 2012. And as Judge Kessler wrote in the district court, plaintiff hasn't identified any circumstances that would indicate anything different from that or a specified term of employment. There was no such attempt made because there's no evidence that there was anything other than at-will employment. And as Judge Garland's questions pointed out, the D.C. Court of Appeals has now ruled at least four times that an at-will employment relationship cannot serve as the basis for a suit for tortious interference with contractual relations. But what about Costco, which describes Sorrell as allowing such a claim, and held that a tortious interference claim can't rest on an at-will contract? Your Honor, let me talk a little bit about Costco because I think this case has been thrown around without any reference to what the case was actually about. This case had nothing to do with an at-will employment relationship whatsoever. This was a case in which a realtor, MIF Realty, had a contract with the District of Columbia government. And they wanted to assign that contract to Costco. And they had a right to do so under their agreement with the District of Columbia. The only qualification was that if the District of Columbia said that they were in default under the original lease agreement, then they couldn't assign it. So they went to the District of Columbia and said, look, we want to assign our lease to Costco, and we're not in default, so certify and let us go forward with the assignment. Well, the district messed around and messed around and delayed and delayed, and finally on the very last day when the assignment was supposed to go and be closed, the district announces, oh, you're in default, you can't assign without our approval, and in order to get our approval, we want to renegotiate the underlying lease. Now, it was in those circumstances that Costco sued the District of Columbia and said, wait a minute, you're interfering with our lease assignment deal with MIF. Now, it is true that at a certain point in time, namely after November 22, 1999, that assignment agreement between MIF and Costco became terminable, but there were months and months before the termination in which the agreement was in no way terminable. Not only was it not an at-will employment agreement, it wasn't terminable at all. MIF would have had no right to terminate that agreement, and the District of Columbia interfered with the performance of the agreement until such time as MIF's right to terminate was triggered, and then after waiting, MIF decided, well, we're going to terminate. We can't just keep going here indefinitely. The case is totally distinguishable. It has nothing to do with the situation that we have here. And as far as Sorrells is concerned, Your Honor, I have a couple of points to make. Number one, as I think Judge Harold Green recognized in the White House travel agent's back in 1997, and as Judge Garland's question suggested, the argument was never made. The supervisor in Sorrells who was found liable by the jury came to this court, I'm sorry, came to the D.C. Court of Appeals with two arguments, one that she couldn't be liable because she was a supervisor and therefore she was essentially the same as Garfinkels, and the court rejected that argument saying she was not the alter ego, she was not an officer, she couldn't bind Garfinkels. She was merely a supervisor. And then the other argument she made was that there was insufficient evidence to show that she acted with malice. And the D.C. Court of Appeals said, well, it was close, but Judge Terry's opinion said, I think there was enough to go to the jury, and they went to the jury, and she was found liable. She never said because Sorrells was an at-will employee, there can't be any tortious interference with contractual relations. And perhaps the reason she didn't make that argument was because all four of the cases in which the D.C. Court of Appeals has said there is no such claim came after Sorrells. So all four of Bible Way, McManus, Futrell, and now Little, just earlier this year, are all after Sorrells. So it's hardly surprising that perhaps the lawyer in Sorrells didn't think of the argument the D.C. Court of Appeals hadn't yet held that. Now, plaintiff has, in an effort to say that there's a need for certification, he's relied on Sorrells and Casco, which I've addressed. He's asserted there may be some factual distinction that, in plaintiff's view, might make a difference. First, in the district court, he tried to say, well, I'm a third. The defendant here, the BAE defendant, is a third party. That's different from the situation in some of the other cases. But, of course, the defendant in Futrell and Little was also a third party. In Futrell, the defendant was the bonding company, not the employer. And in Little, the defendant was the D.C. Water and Sewer Authority, not the services company that was Mr. Little's employer. So that was a distinction that could not withstand analysis after Futrell and Little. And besides that, as Judge Kessler said in the district court, the question of whether the interferer is or is not a third party is irrelevant to the question of whether an at-will employment agreement can constitute a contract for purposes of tortious interference with contract claim. So that distinction doesn't help. And now in this court, the plaintiff has tried to say, well, there's bad faith here. But, again, bad faith was alleged in Futrell. The bonding company in Futrell was said to have acted in bad faith in refusing to continue to bond Barbara Futrell as an employee of the Department of Labor Federal Credit Union. And, again, the distinction of whether or not there's a bad faith allegation doesn't have anything to do with whether an at-will employment arrangement can serve as the basis for tortious interference. Well, if there were a – I guess some of this has to do with the question of what bad faith means. But if there were a reason against public policy, that is, an interference that was violative of civil rights laws, violative of safety – public safety laws, and those kind of reasons were behind the interference, do you think the D.C. Court of Appeals would still say that just because it's an at-will contract, there's no cause of action there? I'm not sure, Your Honor. There was a case in the D.C. Court of Appeals some time ago. I believe it's the Adams case, if I remember correctly. And the Adams case said that you could – if I remember the holding, I think it said you could bring a wrongful discharge claim if your claim was that they were requiring you to violate the law. Right. And – but that's not – you know, that's not in this case. So whatever they might say in that circumstance, we don't have that here. There's really no ground for certification based on decisions in other jurisdictions or based on alleged disagreements among judges on the U.S. District Court here in the District of Columbia. It seems to us pretty clear that not only would the D.C. Court of Appeals be asked to change its prior rulings, but it could only do so by sitting in bank. If the court – if this court were to issue a certification, no panel of the D.C. Court of Appeals could issue – could answer this question differently. It would have to be the in-bank court because of the four previous rulings in Bible Way and McManus and Futrell and Lill. So for all those reasons, Your Honor, we don't think that the court should certify any question. We don't think that would be appropriate under this court's case law about when certification is proper. We've cited those cases on page 14 of our brief. Is there a case – we've said that the case has to be one of extreme public importance. Is there a case in which we've actually relied on that ground as compared to the uncertainty ground? I don't know of one, Your Honor, but I can't say that I have every case in mind. I think that in this case, the claim is that there's genuine uncertainty, and we don't think that claim can withstand scrutiny. Questions from the bench? Thank you very much. Plaintiff, we'll give you another two minutes. Can I just follow up on that one question? So we have said in Joy v. Bell Helicopter that it has to be a matter of, quote, extreme public importance. Is this a matter of extreme public importance? Extreme public importance. Well, the court hasn't provided much guidance on what exactly that means. That's our man. I agree. But I think that the court could easily turn to the D.C. Court of Appeals to answer that question because it has identified, both in Sorrell's and in McManus, it has adopted the processor formulation of a third-party interference with employment if the employment was procured by improper means. And so those are in two cases, Sorrell's and McManus. Well, what's the improper means that you're talking about? The improper means in this case were several. I mean, there was a misrepresentation of fact about what the non-compete stood for, and there was also the threat of civil litigation. But not the kind of things that I was engaging Mr. Buscemi in questions about, not violation of some other law, not safety violation, something like that. I would agree with that. We are dealing with employment here, and also another public importance would be the relationship between businesses. I mean, it is a commercial issue. Here's my question about this. This is the other underlying thing that's bothering me. We're dealing with another court of equal stature to our own, and we can't just send them any question that they're uncertain about. We're uncertain about a lot of things too. My guess is that we would not like it if the Third Circuit or the Second Circuit sent every question that we're uncertain about to us. And so we have to sort of pick our causes with some care. And how do we decide? Even if there's some degree of uncertainty, don't we have to think that this is a relatively or pretty important question to force the D.C. Court of Appeals to answer a query from us? En banc. En banc, which is a point I hadn't thought of that Mr. Buscemi raised. Right. Do you agree with that, by the way, that it would mean a court would need to sit on bank? I don't agree with that. No? I think that the – Given the Bible – Well, I think that in this case – How could it possibly – In this case, it may potentially be the case, because basically the argument is that there's confusion in there. Your argument is there are two lines of cases, so they've got to overrule one line. Right. Or they would have to make a decision as to – But you said first in response to Judge Garland, when he asked about whether this is a matter of extreme public importance, you said that the D.C. Court of Appeals should decide that. No, what I'm saying is that this court potentially could turn to guidance from the D.C. Court of Appeals on that issue. As to whether it's a matter of great public importance? In the District of Columbia, given – So ask them first that, and then if it is, then please answer the question. Well, I think that in order to answer the question of whether this has importance or not, the decisions of the D.C. Court of Appeals can be turned to to help guide the answer on that. And that's why I would suggest Sorrell's and McManus's adoption of the Prosser formulation, which it appears to be carving out an exception to the general rule of no tortious interference with at-will employment in a situation where there's third-party interference when the termination is procured through improper means. You think that indicates that the Court of Appeals thinks it's of extreme importance? Is that a true point? That would be our – yes. The other, although we would not have cases to cite, is the more general importance of employment and also the commercial relations between businesses, because that's what the facts are in this case. But it also remains open, does it not, for a person who is employed at will under the D.C.C.A. law to bring an action for interference with contractual – in part with a business opportunity or something of that sort? Yes, although the facts of this case really were interference with an existing contractual relationship. So that's the reason why that claim is the one that – So that was not open to you? It was open, but it didn't necessarily fit the facts of this case. That's what I mean, you couldn't pursue that type of claim. We chose not to go forward with that claim because it doesn't arise from the facts of the case. Is that because that's limited to situations where there is no contract or – Well, McManus has spoken to that, that there's no tortious interference with prospective economic relations, but the issue here was that there was an existing employment – It wasn't prospective. It was existing as opposed to prospective, and that's why, you know, Bible addresses that issue. But we have two other cases, Sorrells and Casco, which contrary to Bible way allowed these claims to go forward, and hence the confusion in our view. Further questions? Thanks to both sides. We'll take this matter under submission.